No. 19-2273

# In the United States Court of Appeals for the Fourth Circuit

NORTH CAROLINA STATE CONFERENCE OF THE NAACP, CHAPEL HILL–CARRBORO NAACP, GREENSBORO NAACP, HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY BRANCH OF THE NAACP, WINSTON SALEM–FORSYTH COUNTY NAACP,
*Plaintiffs-Appellees,*

*v.*

PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives,
*Appellants,*

&

DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections; STELLA E. ANDERSON, in her official capacity as Secretary of the North Carolina State Board of Elections; DAVID C. BLACK, KEN RAYMOND, and JEFFERSON CARMON III, in their official capacities as members of the North Carolina State Board of Elections,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**PETITION FOR REHEARING EN BANC**

(counsel listed on following page)

Irving Joyner
P.O. Box 374
Cary, NC 27512
(919) 319-8353
ijoyner@nccu.edu

Penda D. Hair
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
(984) 260-8176
phair@forwardjustice.org

Caitlin A. Swain
Kathleen E. Roblez
FORWARD JUSTICE
400 W. Main St., Suite 203
Durham, NC 27701
(919) 323-3889
cswain@forwardjustice.org

James W. Cooper
Jeremy C. Karpatkin
Andrew T. Tutt
Stephen K. Wirth
Jacob Zionce
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
james.cooper@arnoldporter.com

John C. Ulin
TROYGOULD
1801 Century Park East
Suite 1600
Los Angeles, CA 90067
(310) 553-4441
julin@troygould.com

Counsel for Plaintiffs-Appellees North Carolina State Conference of the
NAACP, Chapel Hill–Carrboro NAACP, Greensboro NAACP, High Point
NAACP, Moore County NAACP, Stokes County Branch of the NAACP,
Winston Salem–Forsyth County NAACP

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Appellees make the following disclosures:

1.      Appellees are the following not-for-profit organizations: North Carolina State Conference of the NAACP, Chapel Hill-Carrboro NAACP, Greensboro NAACP, High Point NAACP, Moore County NAACP, Stokes County Branch of the NAACP, and Winston Salem-Forsyth County NAACP.

2.      No Appellee is a publicly held corporation or other publicly held entity.

3.      No Appellee has any parent corporations.

4.      None of Appellees' stock is owned by a publicly held corporation or other publicly held entity.

5.      There is no other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation.

6.      No Appellee is a trade association.

7.      This case does not arise out of a bankruptcy proceeding.

8.      Appellees' Corporate Disclosure Forms were filed on this Court's docket on November 27, 2019 (Dkt. 22-29), and they remain accurate.

s/ *Stephen K. Wirth*
Stephen K. Wirth

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ............................ i

TABLE OF AUTHORITIES ................................................ iii

RULE 35(b) STATEMENT .................................................1

ISSUES WARRANTING EN BANC CONSIDERATION ...........................2

STATEMENT OF THE CASE ...............................................3

REASONS FOR GRANTING THE PETITION .................................13

I.    Permitting State Legislators to Intervene as of Right Based on Only a "Minimal" Showing of Inadequacy Conflicts with the Prior Decisions of This Court and Creates a Circuit Split....................13

II.   The Case Is of Exceptional Importance Because It Will Cause Disarray in the District Courts and Because It Implicates Profound Questions Under the North Carolina Separation of Powers Doctrine. ..........................................16

CONCLUSION.........................................................19

CERTIFICATE OF SERVICE ............................................20

CERTIFICATE OF COMPLIANCE ......................................21

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Commonwealth of Virginia v. Westinghouse Elec. Corp.*,
    542 F.2d 214, 216 (1976) .................................................................9, 14

*Planned Parenthood of Wisconsin, Inc. v. Kaul*,
    942 F.3d 793 (2019) ..........................................1, 2, 10, 11, 12, 13, 14, 15, 16, 17

*Stuart v. Huff*,
    706 F.3d 345 (2013) .....................................1, 2, 9, 10, 11, 12, 13, 14, 15, 16, 18

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1971)..........................................................................9, 14

**Statutes**

North Carolina General Statutes
    § 1-72.2 .................................................................................7, 17
    § 1-72.2(a) .....................................................................8, 10, 12, 18
    § 1-72.2(b) ...............................................................................12, 18
    § 120-32.6 ..................................................................................10

**Rules**

Federal Rules of Civil Procedure
    Rule 24 ....................................................................................3, 5
    Rule 24(a)(2) ..........................................................................10, 12, 13
    Rule 24(b)(3)...............................................................................10

## RULE 35(b) STATEMENT

This petition seeks review of an unprecedented decision by a divided panel of this Court, which permits a state legislator to intervene *as of right* in a suit challenging state law based only on a "minimal" showing that the state attorney general is inadequately representing the State's interests. Op. 27. That extraordinary decision creates an intra-circuit conflict with this Court's decision in *Stuart v. Huff*, which held that proposed intervenors must make a "strong showing of inadequacy" "where [they] … share the same ultimate objective as the existing defendants and where those defendants are represented by a government agency." 706 F.3d 345, 351-352 (2013). And it splits with a recent Seventh Circuit decision, *Planned Parenthood of Wisconsin, Inc. v. Kaul*, which addressed the exact same legal question in nearly identical factual circumstances and concluded that, because the state attorney general is "charged by law" with defending state law, he "is presumed to be an adequate representative 'unless there is a showing of gross negligence or bad faith.'" 942 F.3d 793, 799 (2019). En banc review is therefore necessary to bring consistency to this Court's decisions and to repair the inter-circuit split created by the majority opinion.

This appeal also concerns questions of exceptional importance, which independently justify en banc review. The standard for intervention as of right is a matter of vital practical importance to all district courts in the Circuit. As Judge Harris noted in her powerful dissent, the majority "is opening the door to 'intractable procedural mess[es]' that will hamstring our district courts in their efforts to responsibly manage the proceedings before them." Diss. 40 (quoting *Kaul*, 942 F.3d at 801). Beyond that, the majority reached out to decide a deep conflict between the North Carolina executive and legislative branches over unsettled questions under North Carolina's separation of powers doctrine. Not only did the majority answer those questions wrongly; it could have avoided them entirely by simply applying *Stuart*.

The Court should grant the petition for rehearing en banc.

### ISSUE WARRANTING EN BANC CONSIDERATION

In a case challenging the legality of a state statute where the state attorney general is already defending state law, do proposed intervenors have to satisfy a heightened burden to demonstrate that the attorney general is inadequately representing the State's interests, as this Court held in *Stuart v. Huff*, 706 F.3d 345 (2013), and the Seventh Circuit held in *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793 (2019); or can the proposed

intervenors intervene upon meeting only a "minimal burden," as the majority held here?

## STATEMENT OF THE CASE

**1.** Plaintiffs seek to enjoin the enforcement of a North Carolina law that requires photo voter ID and vastly increases the number of authorized poll observers—Senate Bill 824 (S.B. 824)—because it violates the Fourteenth and Fifteenth Amendments and Section 2 of the Voting Rights Act (VRA) by discriminating against African American and Latino voters.

Plaintiffs filed this lawsuit on December 20, 2018, seeking declaratory and injunctive relief against the North Carolina State Board of Elections (State Board) and the Governor (who later succeeded in being dismissed from the lawsuit). President Pro Tempore of the North Carolina Senate Philip E. Berger and Speaker of the North Carolina House of Representatives Timothy K. Moore (Proposed Intervenors), purportedly acting on behalf of the North Carolina General Assembly, initially sought to intervene as defendants in this lawsuit under Federal Rule of Civil Procedure 24 on January 14, 2019. JA68-101. The district court denied that motion on June 3, 2019. JA368-90.

In denying the intervention motion, the district court held that Proposed Intervenors do not have an interest in this litigation and that the State of

North Carolina's interests are being adequately defended by the State Board, represented in court by the North Carolina Attorney General and non-partisan attorneys from the North Carolina Department of Justice. JA368-90. The district court held that Proposed Intervenors' participation would "unnecessarily complicate and delay the various stages of this case, to include discovery, dispositive motions, and trial," through lengthy, repetitious, and frivolous motions, which will "hinder, rather than enhance, judicial economy." JA388. The district court did, however, grant Proposed Intervenors "the right to participate in this action by filing *amicus curiae* briefs." JA369.

Rather than appeal the denial of their motion, Proposed Intervenors waited six weeks to file a *renewed* motion to intervene on July 19, 2019. JA432-34. Then, notwithstanding their own delay, Proposed Intervenors filed a "Motion for Ruling on Renewed Motion to Intervene," less than two months later, on September 17, 2019, demanding that the court act on their renewed motion. D. Ct. Dkt. 71. Less than a week after that, and before the district court ruled on their renewed motion, Proposed Intervenors began filing a deluge of meritless and duplicative filings in this Court and the district court. Proposed Intervenors improperly appealed their renewed motion on September 23, 2019, JA794-96 (*Berger v. N.C. State Conference of the NAACP*, No. 19-2048), and

then immediately filed an improper and duplicative mandamus petition, *In re Berger*, No. 19-2056 (4th Cir. Sept. 27, 2019). Proposed Intervenors also moved to expedite the appeal, No. 19-2048, Dkt. 12, and filed two motions to stay the district-court proceedings—one in the district court, D. Ct. Dkt. 75, and one in the mandamus action, No. 19-2056, Dkt. 11. On October 8, 2019, this Court dismissed Proposed Intervenors' appeal because the Court "lack[ed] appellate jurisdiction," and denied both their mandamus petition and the motion to stay district-court proceedings. No. 19-2048, Dkt. 50; No. 19-2056, Dkt. 37.

On November 7, 2019, the district court denied Proposed Intervenors' renewed motion to intervene. JA3238-46. The court first addressed movants' continued belief "that they were entitled to intervene as of right based on the arguments made in their prior briefing," as well as their suggestion that they could "reserve the right to challenge the Court's rejection of those arguments on appeal." JA3240. Finding that "Proposed Intervenors misapprehend that status and posture of the case," the district court noted that the extensive Rule 24 analysis set out in the order denying the first motion to intervene "remains undisturbed." JA3240-41. "Proposed Intervenors had the opportunity to appeal the Court's denial order; they failed to do so." JA3241.

Addressing the "narrow exception" left open in the prior order, the court assessed whether movants' presented any "newly available" "hard evidence" that the State Board had declined to defend this lawsuit. JA3241-42. On this question, the court concluded that "it is abundantly clear that the State Board is actively and adequately defending this lawsuit." JA3242. The district court also rejected the renewed motion for permissive intervention, explaining that Proposed Intervenors' litigation conduct had convinced the court that "intervention would only distract from the pressing issues in this case." JA3245-46. On November 14, 2019, Proposed Intervenors appealed the district court's denial of their renewed request to intervene.

Meanwhile, the case proceeded in the district court. On December 31, 2019, the Court granted Plaintiffs' Motion for a Preliminary Injunction and enjoined enforcement of the law. D. Ct. Dkt. 120. The Court found that S.B. 824's enactment was "impermissibly motivated, at least in part, by discriminatory intent," and that the law's voter-ID and ballot-challenge provisions likely violated the Voting Rights Act and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 58. In reaching this decision, the Court considered and properly rejected the arguments that Proposed Intervenors offered in their *amicus* brief. *Id.* at 14, 40, 42. On January 29, 2020, the State Board

appealed the district court's grant of a preliminary injunction and filed two lengthy merits briefs defending S.B. 824. *N.C. NAACP State Conference v. Raymond*, No. 20-1092 (Jan. 29, 2020). That appeal remains pending.

**2.** On August 14, 2020, a divided panel of this Court vacated the district court's decision denying intervention. Judge Quattlebaum, joined by Judge Richardson, held that the district court applied the wrong standard in denying the intervention motion. But before reaching the merits, the majority decided a series of antecedent questions. First, the majority held that the Court has appellate jurisdiction, despite the fact that the Proposed Intervenors did not appeal the first denial of their motion to intervene, but rather renewed their motion after the time to appeal had passed. Op. 7-9. Second, the majority held that Proposed Intervenors have Article III standing to appeal based on a state statute, N.C. Gen. Stat. § 1-72.2, despite the fact that the Attorney General is actively defending the lawsuit. Op. 10-14. Third, the majority rejected the Attorney General's argument that allowing state legislators to intervene as of right on the basis of N.C. Gen. Stat. § 1-72.2 would violate North Carolina's separation of powers. Op. 14-16.

Turning to the merits, the majority first held that, in determining that Proposed Intervenors lack a protectable interest, the district court did not

give enough "careful consideration" (Op. 20) to N.C. Gen. Stat. § 1-72.2(a), which provides that "when the State of North Carolina is named as a defendant" in a case "in any federal court in which the validity or constitutionality of an act of the General Assembly … is challenged," the court "is requested to allow the legislative branch and the executive branch of the State of North Carolina to participate in any such action as a party." The majority did not mention, however, that "the State of North Carolina" was *not* "named as a defendant" in this case.

Second, the majority instructed the district court that, if Proposed Intervenors establish that they have a protectable interest, the court will have to consider whether that interest will be "practically impaired" if they are not permitted to intervene, considering "the time-sensitive nature of the case; the adequacy of the State Defendants' defense of the constitutionality of S.B. 824; and their interest in engaging in discovery, presenting experts and participating in motions practice." Op. 22. The district court did not meaningfully address this second prong because it found that the defendants did not have a protectable interest in the case.

Third, the majority held that the district court had applied the wrong standard to determine whether the Attorney General was adequately

defending state law. The majority reluctantly recognized that it was "constrained to follow" (Op. 24 n.8) this Court's decision in *Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (1976), which held that "when a party seeking intervention has the same ultimate objective as a party to the suit," the proposed intervenor "must establish one of three factors—adversity of interest, collusion or nonfeasance—to overcome [the] presumption [of adequacy]." Op. 23. But the majority faulted the district court for applying the heightened standard of *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), which "requires intervenors to 'mount a strong showing of inadequacy' where defendants are represented by a government agency." Op. 24 (quoting *Stuart*, 706 F.3d at 352). The majority reasoned that, despite the fact that defendants here are, as in *Stuart*, "represented by a government agency"—the State Board and attorneys from the North Carolina Department of Justice—*Stuart* did not apply because Proposed Intervenors are legislators, not private persons, as was the case in *Stuart*. Instead, the majority held that the district court should have applied the "minimal burden" standard from *Trbovich v. United Mine Workers*, 404 U.S. 528 (1971).

The majority acknowledged that its holding directly conflicts with a recent decision by the Seventh Circuit in *Planned Parenthood of Wisconsin, Inc.*

9

*v. Kaul*, 942 F.3d 793 (2019), which rejected a nearly identical attempt by the Wisconsin legislature to intervene in a case where Wisconsin's attorney general was defending state law. The majority acknowledged that *Kaul* "does, in fact, impose a heightened burden—one requiring a proposed intervenor to establish gross negligence or bad faith—to overcome the presumption of adequacy that circuit applied when a state attorney general was defending the constitutionality of a law." Op. 26. But the majority disagreed with the Seventh Circuit's reasoning and with the dissent's view that "*Kaul* aligns with our *Stuart* decision." *Ibid.*

Finally, the majority vacated the district court's denial of permissive intervention, holding that the court should have addressed N.C. Gen. Stat. §§ 1-72.2(a) and (b) and 120-32.6 when considering permissive intervention— even though Rule 24(b)(3) requires courts to consider only "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

**3.** Judge Harris dissented. Her analysis began with Rule 24(a)(2)'s adequacy prong. Judge Harris found the Seventh Circuit's decision in *Kaul* "particularly instructive here because the Seventh Circuit's analysis aligns so substantially with [this Court's] approach to adequacy" in *Stuart*. Diss. 38. Judge

10

Harris reasoned that "[a]bsent a meaningful presumption of adequacy, federal courts would be required … to arbitrate, de novo, the inevitable strategic disagreements that will arise even among parties who share the same ultimate objective, deciding which trial tactics do and do not amount to 'adequate' representation," a scenario that "'risks generating endless squabbles at every junction over how best to proceed.'" Diss. 40 (quoting *Stuart*, 706 F.3d at 354). Judge Harris then applied *Stuart*'s presumption of adequacy to reject Proposed Intervenors' arguments—including their "startling accusation" that, because of the Attorney General's policy views, he "cannot be trusted to defend S.B. 824"—concluding that "[a] proposed intervenor's intensity of conviction, armchair quarterbacking, and political bluster do not warrant what the Seventh Circuit rightly called the 'extraordinary finding' that a state attorney general has failed to adequately represent his state's interests, notwithstanding a statutory duty to do so." Diss. 45-46 (quoting *Kaul*, 942 F.3d at 801).

Judge Harris rejected the majority's cabining of *Stuart* to cases involving private, as opposed to governmental, intervenors. She instead agreed with the Seventh Circuit that a proposed intervenor's "identity as a government party … justif[ies] an especially strong presumption of adequacy" because the intervenor's interests go "further than sharing a goal" with the named

defendants; rather, the intervenor and the defendants "intend[] to represent the same client," the State. Diss. 48 (quoting *Kaul*, 942 F.3d at 801). Judge Harris concluded that "[w]hen the interest invoked by a proposed intervenor is represented already by a state executive-branch official designated for that purpose under state law, then it makes perfect sense to bring to bear an especially strong presumption of adequacy, putting the intervenor to a 'heightened burden.'" Diss. 49 (quoting *Kaul*, 942 F.3d at 810 (Sykes, J. concurring)).

Judge Harris then turned to "two of the most difficult issues" raised by majority's vacatur: standing and the nature of Proposed Intervenors' interest under Rule 24(a)(2). With regard to standing, Judge Harris noted that N.C. Gen. Stat. § 1-72.2(a) applies only in cases, unlike this one, where "the State of North Carolina is a named party." Diss. 53-54. And, "[m]ost important," she noted that N.C. Gen. Stat. § 1-72.2(b) only "purports to bestow on the Leaders 'standing to intervene *on behalf of the General Assembly*,' not the State." Diss. 53. She thus concluded that "whatever the State's policy preferences, if it is unprepared to designate the Leaders to speak on its behalf in federal court, then the Leaders cannot invoke the State's own interest in the validity and enforcement of its laws to satisfy Article III's standing requirements." Diss. 54.

With regard to Proposed Intervenors' interest under Rule 24(a)(2), Judge Harris noted that even if the majority were correct on the merits, there remains a serious question of appellate jurisdiction. Because Proposed Intervenors took no appeal from the district court's first order, which conclusively determined that the Proposed Intervenors lack a protectable interest, she concluded that they forfeited their right to appeal that issue. Diss. 57.

Finally, Judge Harris concluded that the majority was wrong to vacate the district court's denial of permissive intervention, reasoning that "[o]nce the district court found that the Leaders' intervention was likely to cause undue delay and prejudice the plaintiffs, it did not abuse its discretion by denying permissive intervention on that basis alone." Diss. 59.

## REASONS FOR GRANTING THE PETITION

### I.  Permitting State Legislators to Intervene as of Right Based on Only a "Minimal" Showing of Inadequacy Conflicts with the Prior Decisions of This Court and Creates a Circuit Split.

En banc review is warranted because the majority's decision conflicts with this Court's decision in *Stuart v. Huff*, 706 F.3d 345 (2013), and creates a clear circuit split with the Seventh Circuit's decision in *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793 (2019).

The panel majority stakes out a remarkable position: In a case where a State's attorney general is actively representing the State and defending challenged provisions of state law in federal court, another branch of the same state government can intervene *as of right* upon only a "minimal" showing that the attorney general's representation is inadequate. That conclusion is not only wrong and threatens to "open[] the door to 'intractable procedural mess[es]' that will hamstring our district courts in their efforts to responsibly manage the proceedings before them," Diss. 40 (quoting *Kaul*, 942 F.3d at 801); it directly conflicts with this Court's prior decision in *Stuart* and opens up a circuit split with the Seventh Circuit.

*Stuart* is directly on point. The case concerned a motion by a group of physicians to intervene on the side of the State to defend state abortion regulations. This Court applied a presumption of adequacy to the state attorney general's representation, based on the longstanding rule that "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit," the courts presume "that its interests are adequately represented" unless the party seeking intervention can show "adversity of interest, collusion, or non-feasance." 706 F.3d at 349 (quoting *Westinghouse*, 542 F.2d at 216). Citing the Supreme Court's decision in *Trbovich v. United Mine Workers*, 404

14

U.S. 528 (1971), the proposed intervenors argued that they needed to meet only a "minimal burden" to overcome the presumption of adequacy. This Court disagreed, holding that "where [the proposed intervenors] concede that they share the same ultimate objective as the existing defendants and where those defendants are represented by a government agency," proposed intervenors must make a "very strong showing" of inadequacy. *Id.* at 351-52. Those two factors are both satisfied here. Proposed Intervenors and the State Defendants both purport to represent the State's interests, and the State Defendants are represented by the State Board, the Attorney General, and Justice Department attorneys.

The majority's attempt to cabin *Stuart* to cases involving *private* intervenors is not supported by *Stuart*'s holding or logic and directly conflicts with *Kaul*, as Judge Harris explains (at 47-49). If anything, the fact that both parties here purport to represent the same client—the State—with the same objective—upholding S.B. 824—makes *Stuart*'s heightened burden even more appropriate. *See* Diss. 48. Moreover, the *Stuart* court's concerns—that permitting intervention as of right based on "unremarkable divergences of view" between parties with the same ultimate goals "risks generating endless squabbles at every juncture over how best to proceed," 706 F.3d at 354—are even

greater in cases like this one, where two (or more) sets of attorneys seek to represent the interests of one State. Case in point: Proposed Intervenors sought a stay of the preliminary injunction pending appeal, citing the State's interests, Dist. Ct. Dkt. 121, which the State Board opposed, also citing the State's interests, D. Ct. Dkt. 127.

When a state attorney general is representing the State in accordance with his statutory duty, proposed intervenors—whether private persons or government representatives—must satisfy more than a "minimum burden" to prove inadequacy under *Stuart* and *Kaul*. Only en banc review can resolve the intra- and inter-circuit splits the majority created.[1]

## II. The Case Is of Exceptional Importance Because It Will Cause Disarray in the District Courts and Because It Implicates Profound Questions Under the North Carolina Separation of Powers Doctrine.

The majority's creation of an intra- and inter-circuit conflict is reason enough to grant en banc review. But that's not all. As Judge Harris noted, the standard for intervention as of right has important practical consequences for every district court in this Circuit. If the majority's "minimal burden"

---

[1]    The fact that the majority vacated the district court's opinion with instructions for the district court to apply the "minimal burden" standard in the first instance is no reason to delay taking up the issue. The defect in the majority's opinion is the standard it announced, regardless of the outcome on remand.

standard is allowed to stand, the district courts "may be subjected routinely to the 'intractable procedural mess that would result from the extraordinary step of allowing a single entity, even a state, to have two independent parties simultaneously representing it.'" Diss. 50 (quoting *Kaul*, 942 F.3d at 801).

And that is not the only exceptionally important question decided by the majority. In order to reach its ultimate holding on the merits, the panel first marched through a string of antecedent federal and state-law questions. Not only did the panel answer all of those questions wrong; it reached out to decide a conflict between the North Carolina executive and legislative branches over complex and unsettled questions of state statutory and constitutional law to hold that N.C. Gen. Stat. § 1-72.2—which has not been given a definitive construction by North Carolina's courts—does not violate North Carolina's separation of powers. And it did so based on the extremely dubious conclusion that defending state law is not the same thing as enforcing state law, so the legislative branch's intervention to defend S.B. 824 does not constitute an executive function. Op. 15.

As the State Defendants' discussed in detail in their prior briefs, the panel is wrong on the merits that defending a law in court is not an executive function. *See, e.g.*, State Br. 17-18. We note, however, that the majority could

have avoided wading into this interbranch dispute entirely by simply applying *Stuart*. *See* Diss. 51-52. And it could have avoided the constitutional question by recognizing, as Judge Harris did (at 53-54), that N.C. Gen. Stat. § 1-72.2(a) does not apply in cases like this one, where the State is not "named as a defendant," and that N.C. Gen. Stat. § 1-72.2(b) purports only to bestow on Proposed Intervenors "standing to intervene on behalf of the General Assembly," not the State.

## CONCLUSION

The Court should grant rehearing en banc.

September 11, 2020

Irving Joyner
P.O. Box 374
Cary, NC 27512
(919) 319-8353
ijoyner@nccu.edu

Penda D. Hair
FORWARD JUSTICE
P.O. Box 42521
Washington D.C. 20015
(984) 260-8176
phair@forwardjustice.org

Caitlin A. Swain
Kathleen E. Roblenz
FORWARD JUSTICE
400 W. Main St., Suite 203
Durham, NC 27701
(919) 323-3889
cswain@forwardjustice.org

Respectfully submitted,

s/ *Stephen K. Wirth*
James W. Cooper
Jeremy C. Karpatkin
Andrew T. Tutt
Stephen K. Wirth
Jacob Zionce
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
james.w.cooper@arnoldporter.com

John C. Ulin
TROYGOULD
1801 Century Park East
Suite 1600
Los Angeles, CA 90067
(310) 553-4441
julin@troygould.com

*Counsel for Plaintiffs-Appellees North Carolina State Conference of the NAACP, Chapel Hill–Carrboro NAACP, Greensboro NAACP, High Point NAACP, Moore County NAACP, Stokes County Branch of the NAACP, Winston Salem–Forsyth County NAACP*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically on September 11, 2020, and will, therefore, be served electronically upon all counsel.

s/ *Stephen K. Wirth*
Stephen K. Wirth

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(4) and 32(g), I hereby certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this brief contains 3,728 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this brief has been prepared using Microsoft Office Word and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

s/ *Stephen K. Wirth*
Stephen K. Wirth