No. 19-2273

In the
United States Court of Appeals
for the Fourth Circuit

NORTH CAROLINA STATE CONFERENCE OF THE NAACP,
CHAPEL HILL – CARRBORO NAACP, GREENSBORO NAACP,
HIGH POINT NAACP, MOORE COUNTY NAACP, STOKES COUNTY
BRANCH OF THE NAACP, WINSTON SALEM – FORSYTH COUNTY
NAACP,

*Plaintiffs-Appellees,*

v.

PHILIP E. BERGER, in his official capacity as President Pro Tempore
of the North Carolina Senate, and TIMOTHY K. MOORE, in his official
capacity as Speaker of the North Carolina House of Representatives,

*Appellants.*

&

DAMON CIRCOSTA, in his official capacity as Chair of the North
Carolina State Board of Elections; STELLA E. ANDERSON, in her
official capacity as Secretary of the North Carolina State Board of
Elections; DAVID C. BLACK, KEN RAYMOND, and JEFFERSON
CARMON III, in their official capacities as members of the North
Carolina State Board of Elections,

*Defendants- Appellees.*

———————————

On Appeal from the United States District Court
for the Middle District of North Carolina

———————————

**PETITION FOR REHEARING EN BANC**

———————————

Dated:  September 11, 2020                    (Counsel listed below)

JOSHUA H. STEIN
Attorney General

Ryan Y. Park
Solicitor General

James W. Doggett
Deputy Solicitor General

Olga E. Vysotskaya de Brito
Paul M. Cox
Special Deputy Attorneys General

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

Counsel for the State Board Defendants

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..........................................................................ii

STATEMENT OF PURPOSE ...................................................... 1

STATEMENT OF THE CASE ..................................................... 3

REASONS FOR GRANTING THE PETITION ..................................... 10

I.    The Panel's Interpretation of Rule 24 Calls for Rehearing
En Banc................................................................... 10

II.   The Panel's Unnecessary Ruling on State Law Calls for
Rehearing En Banc ................................................. 16

CONCLUSION ............................................................. 21

CERTIFICATE OF SERVICE................................................ 22

CERTIFICATE OF COMPLIANCE ....................................... 23

## TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ...............................................................................18

*Burlington N. R.R. Co. v. Woods*,
    480 U.S. 1 (1987) ...............................................................................14

*Chawla v. Transamerica Occidental Life Ins. Co.*,
    440 F.3d 639 (4th Cir. 2006) .....................................................15, 16

*Common Cause v. Lewis*,
    956 F.3d 246 (4th Cir. 2020) ...........................................................20

*Cooper v. Berger*,
    809 S.E.2d 98 (N.C. 2018) ...........................................................3, 19

*Cooper v. Berger*, No. 18 CVS 9805,
    2018 WL 4764150 (Wake Cty. Super. Ct. Aug. 21, 2018)...............3

*In re Separation of Powers*,
    295 S.E.2d 589 (N.C. 1982) .............................................................19

*McCrory v. Berger*,
    781 S.E.2d 248 (N.C. 2016) ...............................................................3

*N.C. NAACP v. Raymond*,
    No. 20-1092 (4th Cir. 2020)..............................................................19

*Planned Parenthood of Wisconsin, Inc. v. Kaul*,
    942 F.3d 793 (7th Cir. 2019) ...................................................passim

*Stuart v. Huff*,
    706 F.3d 345 (4th Cir. 2013) ...................................................1, 5, 11

ii

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S.Ct. 1645 (2017) ...................................................................... 17

*Va. House of Delegates v. Bethune-Hill*,
    139 S.Ct. 1945 (2019) ...................................................................... 17

*Virginia v. Westinghouse Elec. Co.*,
    542 F.2d 214 (4th Cir. 1976) ............................................................ 5

## Constitutional Provisions

N.C. Const. art. II, § 22 ........................................................................... 20

## Session Laws

S.L. No. 2017-57.................................................................................... 2

## Rules

F. R. App. P. 35 ...................................................................................... 13

## Other Authorities

Mary Kay Kane,
    7C Federal Practice & Procedure Civ. (3d ed. 2020) ...................... 14

iii

## STATEMENT OF PURPOSE

This appeal raises an issue of exceptional importance: whether state legislators can alter the federal procedural rules that govern their participation in lawsuits in federal court. Breaking with this Court's precedent, the panel in this case held that state legislators can alter those rules.

That precedent holds that when state executive officials are defending lawsuits, other parties cannot intervene-by-right without making a strong showing of inadequate representation. *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013). The panel, however, held that legislators can circumvent this federal procedural burden by enacting a statute that purports to allow them to represent the State's interests in court.

The panel therefore held that the district court erred by declining to allow the General Assembly's leaders to intervene, even though the members of North Carolina's State Board of Elections, represented by the State's Attorney General, are defending this lawsuit. As the dissent observed, the panel appears to be the first court that has *ever held* that a district court's denial of intervention to state legislators can be error

1

when executive officials are defending a lawsuit.  Op. 35.  The panel's
unprecedented holding warrants en banc review.

En banc review is also warranted for a second reason:  The panel
unnecessarily reached an important, unresolved issue of state law.
Specifically, the panel went out of its way to hold—as a matter of North
Carolina law—that state statutes not only allow legislators to represent
their own interests in court, but those of the State as well, including the
State's interest in *enforcing* its laws.  Op. 13.  The panel also held that
granting the legislature these powers does not violate the separation-of-
powers clause in North Carolina's Constitution.

The 2017 statutes that the panel applied have never been
interpreted by any North Carolina court.  When they were passed, the
Governor vetoed them, warning that they violated separation of powers.
However, a supermajority of the legislature, elected from districts that
have since been invalidated, overrode that veto.  *See* S.L. No. 2017-57,
§§ 6.7(i), (*l*).  That same supermajority repeatedly tried to transfer
executive power to itself by enacting statutes that the North Carolina

courts have struck down as unconstitutional.[1]  Likewise, if the panel were correct that the statutes at issue allow legislators to represent the State's interest in enforcing its laws, those statutes would violate the North Carolina Constitution.

This Court should not reach these issues of state law.  Vacatur of the panel's decision is thus needed to respect this Court's admonition that federal courts should not unnecessarily resolve important issues of state law—especially issues that relate to fundamental questions of a state's constitutional structure.

## STATEMENT OF THE CASE

In 2018, plaintiffs sued the members of the State Board, seeking to stop them from enforcing Senate Bill 824.  JA 62-63.  This law implements an amendment to the North Carolina Constitution that requires presentation of a photo ID to vote.

---

[1]    *E.g.*, *Cooper v. Berger*, 809 S.E.2d 98, 112-14 (N.C. 2018) (striking down statute that granted legislature control over enforcement of election law); *McCrory v. Berger*, 781 S.E.2d 248, 256-58 (N.C. 2016) (striking down statute that granted legislature control over enforcement of environmental law); *Cooper v. Berger*, No. 18 CVS 9805, 2018 WL 4764150, at *13-*14 (Wake Cty. Super. Ct. Aug. 21, 2018) (striking down ballot description for proposed constitutional amendment that would have allowed legislature to control enforcement of all state law, because description was misleading).

The President Pro Tem of the North Carolina Senate and the Speaker of the North Carolina House ("Leaders") moved to intervene. They sought intervention both by-right and permissively, claiming that the Board would not defend this lawsuit. JA 102-24. The Board took no position on whether the Leaders should be allowed to intervene, but disputed their contention that the Board was "not capable of defending this lawsuit." JA 194.

The district court denied the motion. JA 382. The court first addressed intervention-by-right. Under Rule 24(a), a party must be allowed to intervene-by-right if it can show that 1) it has an interest in the subject matter of the action, that 2) this interest will be impaired by the action, *and* that 3) the interest is not adequately represented by the existing parties.

The court held that the Leaders lacked an interest in this action, because the Board was defending the lawsuit. JA 374-79. The Leaders argued that they had an interest because state statutes authorized them to represent the General Assembly's interests in court. JA 114-15. The court observed, however, that state legislators cannot compel federal courts to grant intervention under Rule 24. JA 377.

4

The court also held that the Leaders could not show that the Board's defense of S.B. 824 was inadequate. It observed that "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the [movant] must demonstrate adversity of interest, collusion, or nonfeasance." JA 380 (quoting *Virginia v. Westinghouse Elec. Co.*, 542 F.2d 214, 216 (4th Cir. 1976)). Under this presumption, when state executive officials defend a lawsuit, "the putative intervenor must mount a strong showing of inadequacy" before being allowed to intervene. JA 380 (quoting *Stuart*, 706 F.3d at 352).

Here, the district court found that the Leaders could not make that strong showing, because the Board shared the Leaders' ultimate objective of "defending the constitutionality of the existing law" and the "Attorney General [had not] abdicated [his] responsibility to defend the instant lawsuit." JA 382.

The court also denied permissive intervention. It found that intervention would result in two sets of "dueling defendants," which would burden the court. JA 389. Though the court denied intervention,

5

it stated that it would consider a renewed intervention motion if the Board ceased defending the lawsuit.  JA 390.

Soon thereafter, the Leaders filed another motion to intervene, claiming again that the Board would not adequately defend S.B. 824. JA 469-96.  They also argued for the first time that two recently enacted state statutes—sections 1-72.2 and 120-32.6 of the North Carolina General Statutes—allowed them to represent not only the legislature's interests, but those of the entire State as well.  JA 485-86.

The district court denied the motion.  It held that state law was unclear whether the Leaders could act for the entire State, and that federal law, not state law, governs intervention.  JA 3241 n.3.  The court also held that intervention was unwarranted because the Board was defending the lawsuit, and had just "filed an expansive brief opposing Plaintiffs' motion for preliminary injunction."  JA 3242.  Thus, the court again denied intervention, this time with prejudice.  JA 3246.

The Leaders appealed.  JA 3247-49.  They argued that they had an unqualified right to intervene because North Carolina law allowed them to represent the State's "interest in the continued *enforceability*" of its laws.  Doc. 31 at 29 (emphasis added).  They also argued that

state statutes granted them "primacy" over the executive branch in representing the State's interest in enforcing its laws. Doc. 31 at 28.

On appeal, the Board again took "no position on whether the [Leaders] should be allowed to intervene." Doc. 41 at 1. But it noted that the Leaders' arguments "in support of intervention as of right lack merit." Doc. 41 at 10. The Board noted that the statutes in question did not authorize the Leaders to act for the entire State. If they did, the Board explained, they would violate the North Carolina Constitution, including its guarantee of separation of powers. Doc. 41 at 16-19.[2] However, the Board urged this Court not to "address those weighty state law issues," because issues of "state constitutional law that affect the structure of state government are most appropriately left for state courts to decide." Doc. 41 at 16.

A panel of this Court, over a dissent, vacated the district court's denial of the Leaders' motion to intervene and remanded for the district court to reconsider its decision.

---

[2]    If these statutes allowed two legislators to act for the entire State in court, they would also have other constitutional infirmities. The Board did not brief those issues, however, because it asked this Court not to reach issues of state law.

7

The panel first held that sections 1-72.2 and 120-32.6 confer Article III standing on the Leaders to intervene. Op. 10-16. In doing so, the panel interpreted these statutes to allow the Leaders to represent the State's interests as a whole. Op. 11-12. It then held that allowing two legislators to represent the State, including the State's interest in "the continued *enforceability*" of state law, does not violate the North Carolina Constitution. Op. 13-16 (emphasis added). The panel reasoned that defending against lawsuits that seek to stop the State from executing its laws does not relate to the execution of the law. Op. 15 (stating that "[e]xecution of the law and defense of a challenged act are different acts").

After holding that these statutes did not violate the North Carolina Constitution, the panel then reviewed the district court's decision to decline to allow the Leaders to intervene.

It first held that the district court erred in holding that the Leaders lacked sufficient interest to intervene, because state law allows them to represent the State. Op. 17-21.

The panel then addressed the district court's adequacy analysis. Op. 23-29. It held that the court wrongly read this Court's decision in

8

*Stuart* to require the Leaders to make a "strong showing" of inadequacy. Op. 24. It held that this standard did not apply because the General Assembly had enacted a statute granting its two leaders the power to act for the State. Because of that statute, the panel held that the Leaders should be allowed to intervene whenever they can make some "minimal" showing of adversity-of-interest with executive defendants, or collusion or nonfeasance by those defendants. Op. 27.

Having announced a new standard to govern intervention-by-right, the panel also vacated the denial of permissive intervention. Op. 29-30.

Judge Harris dissented, explaining that she would have affirmed the denial of the Leaders' motion to intervene. Op. 32-60. Judge Harris observed that no court had ever before held that legislators are "entitled to intervene as of right" where, as here, "the state's executive branch is actively defending state law." Op. 35.

On intervention-by-right, Judge Harris would have held that the Leaders had an interest in this case, because they serve as the legislature's representatives. Op. 55-56. But she declined to address whether state statutes also allow them to represent the State, because

9

those provisions had not yet been given "an authoritative construction by North Carolina's courts." Op. 53. She noted, however, that those statutes appeared to allow the Leaders to represent only the legislature's interests. Op. 54.

Judge Harris also would have applied *Stuart* to require legislative intervenors to make an "especially strong" showing of inadequacy when executive officials defend lawsuits. Op. 49. She noted that legislatures cannot alter the federal presumption of adequacy by enacting state statutes. If they could, then district courts would frequently be compelled to grant intervention-by-right and subject themselves to the "intractable procedural mess" that would result when two parties speak for the State. Op. 50 (quoting *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 801 (7th Cir. 2019)).

## REASONS FOR GRANTING THE PETITION

### I.    The Panel's Interpretation of Rule 24 Calls for Rehearing En Banc.

The panel's interpretation of Rule 24 not only conflicts with the precedent of this Court and other circuits, but will also lead to an "intractable procedural mess," with multiple voices purporting to speak

10

for states in federal court.  It therefore presents an issue of exceptional importance.

Before the panel's decision, courts had uniformly held that, to intervene-by-right under Rule 24, intervenors that seek to vindicate a State's interests must make a strong showing of inadequate representation by executive officials.

Notably, in *Stuart*, this Court held that when a "government agency and the would-be intervenors [both] want [a] statute to be constitutionally sustained," and therefore "share the same ultimate objective" in the litigation, "the putative intervenor must mount a strong showing of inadequacy" under Rule 24.  706 F.3d at 352.  Only when ultimate objectives diverge is the intervenor's burden "more modest," because there is "less reason to presume" that the existing parties "will adequately represent the intervenor."  *Id.*  This Court observed that "every circuit to rule on the matter" had adopted the same rule.  *Id.* at 351.

More recently, in *Planned Parenthood v. Kaul*, the Seventh Circuit reached the same conclusion.  In that case, like this one, a legislature had enacted a statute that purported to empower it to defend lawsuits

11

alongside the executive branch.  The Seventh Circuit held that the state statute did not change Rule 24's requirement that legislators make "a concrete showing of . . . bad faith or gross negligence" by executive defendants before they can intervene-by-right.  942 F.3d at 801.  The Court also observed that all other "courts of appeals that have been asked to consider a state entity's intervention alongside existing governmental parties" have applied a "presumption of adequa[te]" representation.  *Id.* at 800 (citing cases).

Here, the panel broke with these precedents.  The panel held that a lesser showing of inadequacy is required when a legislature has enacted a statute that purports to empower its members to act for the State in litigation.  Under the panel's analysis, to intervene-by-right under such a statute, legislators need only make a "minimal" showing of adversity of interest, collusion, or nonfeasance by existing executive-branch defendants.  Op. 27.

The panel's holding cannot be squared with *Stuart*.  Instead of focusing on whether executive officials and legislators "share the same ultimate objective" of sustaining the constitutionality of the challenged statute, as *Stuart* requires, the panel focused on the legislature's

12

enactment of a state statute that expresses their general desire to be involved in the defense of state statutes.  Op. 27.

The panel's decision also creates a circuit split with the Seventh Circuit, as the panel recognized.  Op. 26.  In *Kaul*, that court held that a similar statute did not lower the intervenor's elevated burden to show inadequacy where the State's interests were being represented by executive officials.  942 F.3d at 801.

Rehearing en banc is therefore warranted to ensure "uniformity of th[is] court's decisions" and resolve "conflicts with the authoritative decisions of other United States Courts of Appeals."  F. R. App. P. 35(b)(1)(A), (B).

The panel's decision also creates an issue of exceptional importance.  *Id.* R. 35(a)(2).  As the dissent recognized, the panel's decision will lead to an "intractable procedural mess" by liberally allowing legislators to intervene on behalf of their state even where those cases are already being defended by executive-branch agencies.

The panel's decision effectively allows state legislators to alter the *federal procedures* that govern their participation in federal court.  But it is black-letter law that "the right to intervene in a civil action

13

pending in a United States District Court is governed by Rule 24 and not by state law." Mary Kay Kane, 7C Federal Practice & Procedure Civ. § 1905 (3d ed. 2020). "The supremacy of federal procedure is even more pronounced in a case, like this one, arising under the Federal Constitution." *Kaul*, 942 F.3d at 797. A contrary rule would cede control over federal procedure to state legislatures, in precisely those cases where there is a compelling federal interest in efficient adjudication. It would also violate the basic rule that federal law governs procedural matters in federal court. *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 8 (1987) (holding that state law cannot diminish "the scope of discretion" afforded federal courts under federal rules).

State law, to be sure, can vest a party with a substantive legal interest that makes intervention-by-right possible, as occurs when, for example, state law grants an insurer a right of subrogation. Kane, *supra*, § 1905. A state statute, however, cannot dictate whether an existing party is adequately representing that interest under Rule 24.

By holding otherwise, the panel's decision risks mandating the "intractable procedural mess" that occurs when two—or possibly more—parties try to speak for a State. Op. 50 (quoting *Kaul*, 942 F.3d at 801).

14

This appeal demonstrates well the potential for that procedural mess. When multiple parties claim to represent a State in the same case, federal courts will be required to resolve collateral disputes, including about "the true position of the State . . . on issues like the meaning of state law." *Kaul*, 942 F.3d at 801-02. Under the panel's rule, nearly any federal lawsuit involving constitutionality of state statutes could become a forum for adjudicating internecine separation-of-powers disputes under state law. The rule does so, even though this Court has held that federal courts should generally avoid deciding "important and novel question[s] of [state] law." *Chawla v. Transamerica Occidental Life Ins. Co.*, 440 F.3d 639, 648 (4th Cir. 2006).

In sum, as the Seventh Circuit has warned, the panel's rule would "leave a district court powerless to control litigation involving states." *Kaul*, 942 F.3d at 802. Without that power, state legislatures could "flood a district court with a cacophony of voices all purporting to represent the state." *Id.* In certain instances, legislators may themselves not even agree on litigation strategy or the meaning of state law, as may happen when the two houses are controlled by different

15

parties. Federal litigation would become subject to the vagaries of internal legislative politics, including the possibility of unpredictable changes in caucus composition and leadership, in contrast to executive officials, whom the people of the entire state elect for fixed terms. Whether state legislatures can force federal courts to accept this outcome is a question of exceptional importance that warrants en banc review.

## II.    The Panel's Unnecessary Ruling on State Law Calls for Rehearing En Banc.

The panel's decision conflicts with precedent and presents an issue of exceptional importance for another reason: The panel ventured unnecessarily into an issue of first impression under North Carolina law, holding that legislators may represent the State in federal court.

This Court has held that federal courts should refrain from "unnecessarily address[ing] . . . important and novel question[s] of [state] law," because they "should avoid deciding more than is necessary to resolve a specific case." *Chawla*, 440 F.3d at 648.

Instead of following this guidance, the panel went out of its way to resolve a novel and important issue of state constitutional law, holding the North Carolina Constitution's separation-of-powers clause is not

16

offended when legislators represent the State's interest in enforcing its laws.

Reaching this novel issue of state law was unnecessary to resolve this appeal. The Leaders did not need to show standing to intervene as defendants in district court. Intervenors need only make that showing if they intervene as plaintiffs and seek new relief not sought by existing plaintiffs. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1648 (2017). Here, the Leaders moved to intervene as defendants and sought no relief from the district court at all. They therefore did not need to make any showing of standing. *Va. House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1951 (2019) (intervenor defendants need only demonstrate standing if they appeal).

The panel's decision to address unnecessarily these state-law issues underscores the exceptional importance of this appeal. The panel's decision, if left as the law of this circuit, threatens to disrupt federal adjudication of lawsuits involving North Carolina, by allowing individual legislators to exercise powers involving the enforcement of state law without going through the legislative process.

17

Article I, section VI of North Carolina's Constitution states that "the legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." Recent North Carolina Supreme Court decisions emphasize the continuing vitality of this constitutional command. *See supra* n.1. Representing a state in litigation, moreover, has traditionally been the province of executive officials—a tradition that recognizes that such activity is an executive, not legislative, function. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 139 (1976) (holding that "conducting civil litigation" on behalf of the government is an executive function).

Without extended analysis of these principles and cases, the panel held as a matter of North Carolina law that allowing legislators to act for the State in court would not violate separation of powers. The panel reasoned that "[e]xecution of the law and defense of a challenged act are different acts." Op. 15. The panel may be correct that allowing the Leaders to defend a challenged act on behalf of themselves or the legislature alone would be constitutional.  But the panel failed to appreciate that decisions about how to defend state law *on behalf of the State* are decisions about how state law will be *enforced*, and are

18

therefore inherently executive in nature. For example, under the panel's logic, the Leaders may speak with authority for the State on "the meaning of state law." *Kaul*, 942 F.3d at 802. This would interfere with the executive branch's traditional role in "protecting the State's interest in the enforcement of its laws." *Id.* at 799.

Under the North Carolina Constitution, once a statute is enacted, the legislative process is over and the legislature cannot control how statutes are enforced. *E.g.*, *In re Separation of Powers*, 295 S.E.2d 589, 594 (N.C. 1982). And the North Carolina Supreme Court has specifically held that interpreting and implementing election laws like S.B. 824 is an *executive* function. *Cooper*, 809 S.E.2d at 112 n.11.

In this very case, the Board has taken positions on behalf of the State concerning the meaning of S.B 824. For instance, it has told the Court that the State interprets S.B. 824 not to allow poll observers to challenge the validity of reasonable-impediment ballots cast by voters who lack photo ID. Brief of Defendants at 13 n.7, *N.C. NAACP v. Raymond*, No. 20-1092 (4th Cir. Mar. 9, 2020).

The panel's decision, however, opens the door to possibly conflicting statements on statutory interpretation on behalf of the

19

State.  Op. 13.  The panel has also opened the door to other enforcement-related activities by individual legislators, such as approving or rejecting settlement agreements negotiated by executive officials on the State's behalf.  In doing so, the panel has allowed two legislators, acting alone, to set policy for the entire State without enacting legislation for presentation to the Governor for signature or veto.  N.C. Const. art. II, § 22.

Whether two of the 170 members of the General Assembly can legally wield these powers at all, and whether they may do so without going through legislative action, are issues of state constitutional law. This Court need not and should not address them.

But if left in place, the panel's decision will profoundly disrupt federal adjudication of lawsuits involving North Carolina.  The Leaders—or their successors—may try to use the panel's decision to establish their "primacy" over the executive branch in federal court. Doc. 31 at 28.  Notably, in the past, these Leaders have gone so far as to openly claim that the statutes at issue give them "an enforcement role" with respect to state law.  Brief for Defendants at 35, *Common Cause v. Lewis*, 956 F.3d 246 (4th Cir. 2020).  For these reasons, the panel's

20

decision to unnecessarily address novel and important issues of state constitutional law raises a question of exceptional importance.

## CONCLUSION

The State Board respectfully requests that the Court grant rehearing en banc.

Respectfully submitted,

JOSHUA H. STEIN
Attorney General

/s/ Ryan Y. Park
Ryan Y. Park
Solicitor General

James W. Doggett
Deputy Solicitor General

Olga E. Vysotskaya de Brito
Paul M. Cox
Special Deputy Attorneys General

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6400
Facsimile: (919) 716-6750
rpark@ncdoj.gov

Counsel for the State Board

September 11, 2020

## CERTIFICATE OF SERVICE

I certify that on this day I filed the foregoing petition with the

Clerk of Court using the CM/ECF system, which will automatically

serve electronic copies on all counsel of record.

Dated:  September 11, 2020.

/s/ Ryan Y. Park
Ryan Y. Park

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the length requirements of Fed. R. App. P. 35(b)(2)(A) because it contains 3897 words, excluding the items listed in Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface:  14-point Century Schoolbook font.

/s/ Ryan Y. Park
Ryan Y. Park